# Steinman, Appellant, v. Edison Electric Illuminating Company.

*Corporations—Light, heat and power companies—Classification of customers—Rates—Discrimination.*

1. A light, heat and power company organized under the Act of May, 8, 1889, P. L. 136, may divide its customers into different classes and charge different rates to different classes, provided that the discrimination is not undue or unreasonable, and that each rate is equal and uniform to all individuals in their respective classes. Thus a company may allow a lower rate for each unit of electric current to customers who consume a certain amount and pledge themselves to deal exclusively with the company for a stated period, than to customers who consume a less amount without binding themselves to take the current for any particular period.

2. In such a case, where the court cannot declare from a mere inspection of the contracts that there was an unlawful discrimination, evidence is admissible to show the reason on which the classification was based, the circumstances and conditions that surrounded the company at the time, and the advantages to be derived by it from such classification.

Argued Nov. 9, 1909. Appeal, No. 22, Oct. T., 1909, by plaintiffs, from judgment of C. P. Lancaster Co., March T., 1906, No. 32, on verdict for defendant in case of A. J. Steinman and Charles S. Foltz, trading as Steinman & Foltz, Publishers of the Intelligencer, v. The Edison Electric Illuminating Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for an alleged unlawful discrimination in rates for electric lighting. Before LANDIS, P. J.

At the trial when C. E. Titzel was on the stand he was asked the following question:

"Q. I call your attention to the fact that the contract with M. T. Garvin & Company, made May 20, 1902, provides for a period of three years, with privilege of five,

and that Garvin covenants and agrees to take all the electric current necessary for lighting and power used in the store, at a designated rate, subject to a discount for forty per cent, for lighting purposes; that the contract with the Cochrans is for five years, subject to the same discount for lighting purposes; that the contract with the New Era Company is for five years, with the privilege of ten, subject to the discount of forty per cent for current used for lighting purposes. State whether or not like terms were given to any other patrons or consumers applying, who you knew consumed a specified quantity or over?"

Mr. Atlee: If the court please, that offer is objected to, because the contracts speak for themselves and express the consideration to this defendant company for entering into the contracts.

The Court: That may be; but still, they would not show that the same contract was not offered to others. The contracts would not show that.

Mr. Atlee: I object as immaterial and irrelevant, further.

The Court: It goes to the question of discrimination—unjust discrimination.

Plaintiffs except. Bill of exceptions signed, sealed and filed for the plaintiffs. [1]

Mr. Hensel: "Q. Were those or like terms given to all other patrons or consumers, whose patronage amounted to a specified sum or excess? A. Yes, sir; they were given the same. Q. It has been testified here that, in this period between 1902 and 1906, there was no competing company in this city. Was there or not, in this city, besides yours, another organized and incorporated electric light company?"

Mr. Atlee: If the court please, that is objected to as immaterial and improper and irrelevant, as the contracts speak for themselves.

The Court: We will let him answer.

Plaintiffs except. Bill of exceptions signed, sealed and filed for the plaintiffs. [2]

"A. The Lancaster Electric Light, Heat & Power Company were incorporated. Q. About what amount of money did you spend in the development and increase of your lighting facilities subsequent to the date of the execution of these contracts?"

Mr. Atlee: If the court please, that is objected to as immaterial, irrelevant and incompetent; because the contracts do not set forth any special reason other than that expressed in the contracts. They speak for themselves.

The Court: I do not see that it makes very much difference. I think we will let the facts come out.

Plaintiffs except. Bill of exceptions signed, sealed and filed for the plaintiffs. [3]

Mr. Hensel: "Q. What amount of money? A. Our company spent about $300,000 on the power plant."

The court charged in part as follows: .

[But, on the other hand, if the company, from proper motives and for proper business reasons, agreed with certain persons who consumed 500 kilowatts per month, to furnish them electricity at a certain fixed rate under certain conditions, and all persons of that class who wished to take advantage of that rate could do so, if they so desired, then there is no discrimination, simply because the parties of that class received larger discounts than the plaintiffs and other persons who did not consume that amount of electricity and were not embraced in that class. If, therefore, the jury find that such were the circumstances, and under such circumstances there was no unjust or unreasonable discrimination in the fixing of these rates in the contracts, then your verdict should be for the defendant.] [4]

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned were* (1–3) rulings on evidence, quoting the bill of exceptions, and (4) portion of charge quoted above.

*Benj. C. Atlee*, for appellants.—The implied condition of the grant of all corporate franchises of even quasi public nature is that they shall be exercised without individual discrimination in behalf of all who desire: Baily v. Gas-Fuel Co., 193 Pa. 175; Mercur v. Electric Light, etc., Co., 19 Pa. Superior Ct. 519; Armour Packing Co. v. Illuminating Co., 100 N. Y. Supp. 605; Hays & Co. v. Pennsylvania Co., 12 Fed. Repr. 309; Kinsley v. Buffalo, N. Y. & P. R. R. Co., 37 Fed. Repr. 181.

*W. U. Hensel*, for appellee.—There was no unlawful discrimination: Baily v. Gas-Fuel Co., 193 Pa. 175; Hoover v. R. R. Co., 156 Pa. 220; Borda v. R. R. Co., 141 Pa. 484; Mercur v. Electric Light Co., 19 Pa. Superior Ct. 519; Bald Eagle Valley R. R. Co. v. R. R. Co., 171 Pa. 284; Rieker v. Lancaster, 7 Pa. Superior Ct. 149; Missouri Pac. Ry. Co. v. Texas & P. Ry. Co., 30 Fed. Repr. 2.

A contract to carry freight for a party at a specific rate, being less than its established schedule, is not void as being an unjust discrimination and against public policy, in the absence of evidence that such special rate is an exclusive privilege: Ragan v. Aiken, 9 Lea, 609; Ex parte Benson, 18 S. C. 38; Avinger v. South Carolina Railway Co., 29 S. C. 265; Johnson v. Pensacola & P. R. Co., 16 Fla. 623; Christie v. Missouri Pacific Ry. Co., 94 Missouri, 453; Bayles v. Kansas Pacific Ry. Co., 5 L. R. A. 480; Cleveland, etc., Ry. Co. v. Closser, 9 L. R. A. 754; Com. v. Randall, 225 Pa. 197.

OPINION BY HEAD, J., July 20, 1910:

The defendant electric light company is a corporation created under the general laws of the state. It is therefore invested with the powers and clothed with the obligations common to all companies of its kind.

The Act of May 8, 1889, P. L. 136, enumerates some of these powers in the following language: "Every such corporation shall have authority to supply light, heat and power or any of them by electricity to the public . . . . at such prices as may

be agreed upon," etc. The plaintiffs in the conduct of their business use light or power or both of them, and purchase the producing electric current from the defendant company. They buy it under a contract which has no definite term and which may be abandoned by the plaintiffs at their pleasure. They are at liberty to consume as much or as little of the current as they choose and are required to pay only for what they use. They reserve the right to purchase any portion of their needed supply from any other competing company. They pay each month for what they have consumed at a rate agreed upon by themselves and the company, which rate is uniform to all persons or corporations in that community who consume the same quantity of current under the conditions above noted.

It appears from the testimony that in 1902 the defendant company found itself confronted with the probability of serious competition in the then near future. Although it then had a considerable sum of money invested in its plant and business, it was contemplating the necessity of the investment of a large additional sum in order to increase its facilities and render a larger and more efficient service to its future patrons. Being desirous of so arranging its business that a considerable portion of its expected revenue might become fixed and ascertainable, it undertook to divide its consumers into two classes, the one to embrace all persons and corporations whose business required the consumption of not less than a fixed amount of electric current annually and who would agree to bind themselves by a contract, extending over a period of years, to purchase their entire needed supply of current from this defendant. The remaining class to embrace all those whose consumption of electric current was smaller than the amount so fixed, and who remained at liberty to buy or not buy from the defendant as their inclination or business advantage might direct. To the first class a rate was given which would make the current sold to them cheaper per fixed unit than the rate imposed upon the other class. There is no contention that each rate was not equal and uniform to all individuals in their respective classes.

The plaintiffs were at the time this classification was adopted and have since remained in the second class. Having learned that certain persons or corporations in their community had entered into long time contracts with the defendant of the character above referred to, and were therefore receiving their electric current at a less rate than the plaintiffs were charged, they brought this action, alleging they had suffered a legal injury by reason of this discrimination between consumers and that the extent of their injury is the difference between the price they paid during the period covered by the action and the price charged to the other class of consumers.

To establish the injury on which they found their action, the plaintiffs must ask the courts to hold that it is not competent for the defendant corporation to make any discrimination at all in the rates charged to its consumers, or that if discrimination under any conditions may be lawful, the necessary conditions are not here present. The first of these contentions is certainly untenable. As we have already seen, under the general laws providing for the incorporation and regulation of such companies, authority is given to them to supply light, heat and power to the public "at such prices as may be agreed upon." We may concede that the defendant company belongs to that class of corporations which, for want of a better name, we call quasi public. Of course we are not to presume that the legislature, in passing the act of 1889, was unmindful of the constitutional provision restricting the powers of such companies, or of its own earlier statute enacted for the purpose of carrying into effect that provision. But it ought to be plain enough that when one asserts that a trading corporation, in classifying its patrons in the manner above described, has committed an unlawful act, the burden is on him to point to the provision of our fundamental or statute law denying to such company the right to apply, in the conduct of its business, a principle as old as trade itself, and familiar to everyone engaged in every branch of commerce. The operation of this principle may be illustrated by what would be considered an axiom in the commercial world, viz.: that the merchant who buys his sugar or flour in thousand barrel lots will be able to

supply himself at a lesser rate per barrel than his smaller competitor who buys in ten barrel lots.

Section 3 of art. XVII of our constitution declares: "All individuals, associations and corporations shall have equal right to have persons and property transported over railroads and canals, and no undue or unreasonable discrimination shall be made in charges or in facilities for transportation of freight or passengers within the state or coming from or going to any other state. Persons and property transported over any railroad shall be delivered at any station at charges not exceeding the charges for transportation of persons and property of the same class in the same direction to any more distant station; but excursion and commutation tickets may be issued at special rates." The most casual reading of the language of this provision at once indicates that there is no prohibition against discrimination in rates without more. It is only when such discrimination is shown to be undue or unreasonable that the restraining force of the organic law becomes applicable. The provision in terms recognizes the right of a railroad company to sell excursion tickets at a special rate. This is nothing more than an application of the principle that the railroad company may sell a thousand tickets to a given destination at a less rate than it would charge to a single passenger going to the same destination. Or it may with like propriety sell transportation to a class of men, who will agree to travel on its line every day in the year, for less than it will sell like transportation to another class, the members of which reserve the liberty to travel only when they choose.

Section 2 of the Act of June 4, 1883, P. L. 72, enacted for the purpose of enforcing the foregoing provision of the constitution, declares: "No railroad company or other common carrier engaged in the transportation of property, shall charge, demand or receive from any person, company or corporation, for the transportation of property or for any other service, a greater sum than it shall receive from any other person, company or corporation for a like service from the same place upon like conditions and under similar circumstances," etc. The legislative intent is thus as plainly expressed in fitting language

as was that of the framers of the constitution. The purpose of both was to prohibit only undue and unjust discrimination by public corporations, but both plainly recognize that there may be discrimination in rates which is neither undue nor unreasonable, and the act last quoted points to the conditions on which such a company may justly classify its patrons and fix definite rates applying to each class.

The decisions of our courts of last resort have thus construed the above-quoted provisions both of the constitution and of the act of assembly. The whole question has been thoroughly threshed out in the case of Hoover v. Penna. R. R. Co., 156 Pa. 220. In that case Mr. Justice GREEN, in a learned and exhaustive opinion, discusses every phase of the question and reviews and analyzes the leading cases both in England and this country. As illustrative of the conclusion reached by all the courts in such cases we may quote the following from that opinion: "The doctrine of the cases above cited was also declared in the case of Baxendale v. R. R. Co., 94 E. C. L. 336, where COCKBURN, J., said: 'If an arrangement were made by a railway company whereby persons bringing a larger amount of traffic to the railway should have their goods carried on more favorable terms than those bringing a less quantity, a court might uphold such an arrangement as an ordinary incident of commercial economy, provided the same advantages were extended to all persons under the like circumstances.' "

In Mercur v. Media Electric Light, Heat & Power Co., 19 Pa. Superior Ct. 519, our Brother ORLADY, speaking for this court, used the following language: "The class of people to whom the service is made is not material, it is the condition and character of the service required in view of location, extent, volume, etc., of the service. The mere fact that a different sum is demanded is not unfair or unjust discrimination. The rule of the company may be necessary for its existence and if it is not an unreasonable one the relator has no just ground of complaint. Similar differences in charge or rate have been upheld in many cases."

The opinion of the learned court below discharging the rule for a new trial cites all of the cases on the question, and we can

see no occasion to again refer to them here. We deem it sufficient to say that we can find no warrant either in constitution, statute or decision for the conclusion that the act of the defendant company in classifying its customers and fixing a definite and uniform rate for each class was an unlawful or forbidden act. The learned court below therefore could not have declared, upon a mere inspection of the contracts offered in evidence, that they exhibited an act of discrimination forbidden either by law or policy.

It follows then that the action of the court, in admitting evidence tending to show the reasons on which the classification was based and the circumstances and conditions that surrounded the company at the time, the advantages to be derived by it from such classification, etc., cannot be successfully assailed. The only pertinent question in the cause was not whether any discrimination existed, but whether a discrimination was shown which under existing conditions and circumstances was either undue or unreasonable. It was to aid in the determination of this issue that the testimony complained of was introduced. Without it there would have been no foundation for a determination, either by court or jury, of the issue stated. The learned court below, under instructions in which we find no error, submitted to the jury the question whether or not the discrimination complained of was either undue or unreasonable, and their verdict has established that it was neither. We think therefore that judgment was rightfully entered on the verdict in favor of the defendant, and the assignments of error must be overruled.

Judgment affirmed.